**REVISED**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  97-50093

JONATHAN WAYNE NOBLES,

Petitioner - Appellant,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Western District of Texas

October 28, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

Appellant Jonathan Wayne Nobles ("Nobles") appeals the district court's denial of his application for writ of habeas corpus.  For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

Appellant Nobles broke into a house in Austin, Texas where Mitzi Nalley and her roommate Kelly Farquar were living.  Nobles brutally stabbed Nalley and Farquar to death and severely injured

Nalley's boyfriend, Ron Ross.  Ross survived the attack, despite receiving nineteen stab wounds and losing an eye.

After the murders, Nobles went home and called his friend Marlly O'Brien, asking her to come over and help him.[1]  She found Nobles in the bathroom with his arm, which had been badly cut, wrapped in a towel.  There was blood all over the bathroom.  Nobles then changed clothes, cleaned the bathroom, and put everything with blood on it into a trash bag which he placed in the trunk of O'Brien's car.  O'Brien dropped Nobles off at a friend's house, where Nobles shaved his beard and had his arm taped up.  O'Brien later picked Nobles up and let him borrow her car while she went to work.  Nobles lied to O'Brien and his other friends about what had happened, saying he had been involved in a fight.

Based on physical evidence from the murder scene[2] and on information obtained from O'Brien and others, Nobles was arrested.  Nobles confessed to the murders and then led police to where he had hidden the trash bag, containing the murder weapon and the blood-soaked clothes he had worn during the killings.

## PROCEDURAL HISTORY

[1]On the evening before the murders Nobles and O'Brien had purchased hypodermic needles filled with what O'Brien assumed was speed.  After the purchase, O'Brien dropped Nobles off at his godmother's house around 6:00 p.m. and picked him up again around 8:00 p.m.  She did not actually see Nobles take any drugs but assumed he had because of his behavior and because she observed track marks on his arms the following morning.  O'Brien testified that Nobles told her he had ingested speed, cocaine, marijuana and liquor that night and that he did not remember what had happened.

[2]Nobles's fingerprint was found on one of the window screens found in the victims' backyard.  Blood and pubic hair found at the scene were consistent with Nobles's own.

In 1987 a jury found Nobles guilty of the murders of Nalley and Farquar. The jury responded affirmatively to the two special sentencing issues submitted pursuant to former Article 37.071 of the Texas Code of Criminal Procedure, Tex. Code Crim. P. Ann. art. 37.071(b)(West 1981), and the trial court imposed the death penalty.

Nobles's conviction and sentence were automatically appealed to the Texas Court of Criminal Appeals, which affirmed both. Nobles v. State, 843 S.W.2d 503 (Tex.Crim.App. 1992). In 1993 Nobles filed a state habeas petition which the trial court and the Court of Criminal Appeals denied. The United States Supreme Court denied Nobles's petition for writ of certiorari on February 21, 1995.

Nobles moved the United States District Court for appointment of counsel and to proceed *in forma pauperis* on a petition for federal writ of habeas corpus. The district court granted a stay of execution and appointed counsel who petitioned for writ of habeas corpus. The district court denied Nobles's petition for habeas relief and Nobles appealed. The district court granted a certificate of appealability on all of Nobles's claims.

## ISSUES RAISED

Nobles's Certificate of Appealability addresses the applicability of the Antiterrorism and Effective Death Penalty Act, the prosecution's use of an edited confession, and the effectiveness of counsel. We address each of these issues in turn.

## DISCUSSION

3

I.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), amended, *inter alia*, § 2244 and §§ 2253-2255 of chapter 153 of title 28 of the United States Code, the provisions that govern all habeas proceedings in federal courts.  See 110 Stat. 1217-21.  The AEDPA also created a new chapter 154, applicable to habeas proceedings against a state in capital cases.  New chapter 154 applies, however, only if a state "opts in" by establishing certain mechanisms for the appointment and compensation of competent counsel.[3]  See 110 Stat. 1221-26.  The AEDPA became effective on April 24, 1996.

In Lindh v. Murphy, 117 S.Ct. 2059 (1997), the Supreme Court held that § 107(c) of the AEDPA, which explicitly made new chapter 154 applicable to cases pending on the effective date of the Act, created a "negative implication . . . that the new provisions of chapter 153 generally apply only to *cases filed after the Act became effective*."  Lindh, 117 S.Ct. at 2068 (emphasis added).  Lindh effectively overruled our decision in Drinkard v. Johnson, 97 F.3d 751 (5th Cir. 1996), in which we held that the AEDPA's amendments to chapter 153 were procedural in nature and therefore applied to cases pending on the effective date of the Act without

_____

[3]We have held that the current Texas scheme for appointment of counsel in capital cases, pursuant to Tex. Code Crim. Proc. Ann. art. 11.071 § 2(d), does not qualify Texas for the expedited procedures of new Chapter 154.  See Mata v. Johnson, 99 F.3d 1261, 1266-67 (5th Cir. 1996), vacated in part on other grounds, 105 F.3d 209 (5th Cir. 1997); see also Carter v. Johnson, 110 F.3d 1098, 1104 (5th Cir. 1997).

4

having "retroactive" effect.[4] <u>Drinkard</u>, 97 F.3d at 764-66. Thus, under <u>Lindh</u>, if a case was "filed" before April 24, 1996, the pre-AEDPA habeas standards apply.

Nobles filed his habeas petition on June 28, 1996, after the AEDPA's effective date. Before the effective date, however, Nobles had moved the district court for appointment of counsel and to proceed *in forma pauperis*.[5] The district court denied Nobles's habeas petition before <u>Lindh</u> was decided and thus relied on <u>Drinkard</u> and <u>Mata</u> in applying the AEDPA to Nobles's petition. See <u>Drinkard</u>, 97 F.3d at 764-66; <u>Mata</u>, 99 F.3d at 1266. Nobles contends that because he made a "filing" (i.e., his motion for appointment of counsel) in his federal habeas action before the AEDPA's effective date, his case was therefore "pending" under <u>Lindh</u> and thus not subject to the AEDPA.[6] <u>Lindh</u>, however, does not

_____

[4]<u>Drinkard</u> and its progeny presumably remain precedent in this circuit to the extent they interpret the provisions of the AEDPA and do not conflict with <u>Lindh's</u> conclusion that the chapter 153 amendments do not apply to cases pending on the effective date of the Act. See <u>Green v. Johnson</u>, 116 F.3d 1115, 1120 n.2 (5th Cir. 1997).

[5]The district court granted Nobles's motion and stayed his execution on November 8, 1995.

[6]Nobles also argues that 28 U.S.C. § 2251, the authority by which the district court stayed his execution, demonstrates that his case was "pending" when the AEDPA became effective. Section 2251 provides in pertinent part:

> A justice or judge of the United States before whom a habeas corpus proceeding is *pending* may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

5

define when a case is "pending" for purposes of application *vel non* of the AEDPA;  in fact, <u>Lindh</u> uses the expressions "cases pending," "cases filed," and "applications pending" interchangeably.[7]

In <u>McFarland v. Scott</u>, 512 U.S. 849 (1994), the Supreme Court held that a "post conviction proceeding" under 21 U.S.C. § 848(q)(4)(B)[8] commences with a death row defendant's motion requesting the appointment of counsel for his federal habeas proceeding.  <u>McFarland</u>, 512 U.S. at 856-57.  The Court also held that "once a capital defendant invokes his right to appointed

(emphasis added).  Nobles contends that the stay of execution under § 2251 "is clearly sufficient judicial intervention in the case to consider the case 'pending.'"  He also points out that Congress used the expression "cases pending" in AEDPA § 107(c) in defining the temporal scope of new chapter 154.

[7]<u>See</u>, <u>e.g.</u>, <u>Lindh</u>, 117 S.Ct. at 2061 ("The issue in this case is whether that new section of the statute dealing with petitions for habeas corpus governs *applications* in noncapital cases *that were already pending* when the Act was passed."); <u>id</u>. at 2063 ("The statute reveals Congress' intent to apply the amendments to chapter 153 only to such *cases as were filed* after the statute's enactment (except where chapter 154 otherwise makes select provisions of chapter 153 applicable to *pending cases*."); <u>id</u>. at 2064 ("If, then, Congress was reasonably concerned to ensure that chapter 154 be applied to *pending cases*, it should have been just as concerned about chapter 153, unless it had the different intent that the latter chapter not be applied to the general run of *pending cases*."); <u>id</u>. at 2068 ("We hold that the negative implication of § 107(c) is that the new provisions of chapter 153 apply only to *cases filed* after the Act became effective.")(emphasis added).

[8]21 U.S.C. § 848(q)(4)(B) provides:

> In any post conviction proceeding under section 2254 or 2255 of title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

counsel, the federal court also has jurisdiction under [28 U.S.C.] § 2251 to enter a stay of execution." McFarland, 512 U.S. at 858. Reading the two sections *in pari materia*, the Court found that the terms "post conviction proceeding" in § 848(q)(4)(B) and "habeas corpus proceeding" in § 2251 referred to the same event, i.e., habeas proceedings under 28 U.S.C. §§ 2254 and 2255. Id.

One could read McFarland to stand for the proposition that when a capital defendant moves for appointment of habeas counsel, his case is "pending" even though no habeas application has been filed. Justice Thomas, dissenting in McFarland, took such a view of the majority's reasoning:

> Thus, after today, the "proceeding" to which § 2251 refers will have two different meanings depending upon whether the stay is sought by a capital or non-capital prisoner. *In the former situation, a "habeas corpus proceeding" under § 2251 will be "pending" once a motion for appointment for counsel is filed.* In the latter, no matter how many preliminary motions a prisoner might file, a proceeding will not be "pending" until an application for habeas relief is filed.

McFarland, 512 U.S. at 872 n.3 (Thomas, J., dissenting) (emphasis added).[9] Justice O'Connor, concurring in part and dissenting in part, agreed with the dissent that a habeas proceeding was not "pending" under § 2251 upon filing of a motion for appointment of

---

[9]The majority appeared to confirm Justice Thomas' view when, responding to his dissent, it observed that § 848(q)(4)(B) indeed creates a "divergent practice" for capital defendants, insofar as their habeas proceedings are commenced by a motion for appointment of counsel. By contrast, "[b]ecause noncapital defendants have no equivalent right to the appointment of counsel in federal habeas corpus proceedings, it is not surprising that their habeas corpus proceedings typically will be initiated by the filing of a habeas corpus petition." McFarland, 512 U.S. at 857 n.3.

counsel.  McFarland, 512 U.S. at 862 (O'Connor, J., concurring in part and dissenting in part) ("[T]he text and structure of the federal habeas statute suggest that the stay provision contained in § 2251 is intended to apply only after a petition has been filed.").[10]

Our recent decision in Williams v. Cain, No. 96-31167, 1997 WL 612739 (5th Cir. Oct. 3, 1997), construes McFarland and resolves the issue.  In Williams, we found that McFarland did not "answer the question of what date a habeas petition becomes 'pending' for determining the applicability of substantive statutes." Williams, 1997 WL 612739, at *3.  The date of a capital defendant's motion for appointment of counsel is therefore irrelevant to the question whether his case is "pending" for purposes of Lindh and the applicability of the AEDPA.  Thus, under Williams, "the relevant date for determining the applicability of the AEDPA to habeas corpus petitions is the date that the actual habeas corpus petition is filed."  Id.

Since Nobles did not file his petition for habeas corpus relief until June 28, 1996 -- some two months after the AEDPA's effective date -- Williams instructs that we apply the AEDPA

---

[10]Justice O'Connor also cited other provisions of the habeas statute to show that a habeas proceeding is not "pending" until an application has been filed:  e.g., § 2254(d) (referring to "any proceeding instituted in a Federal court by an application for a writ of habeas corpus"); § 2242 (an "[a]pplication for a writ of habeas corpus . . . shall allege the facts concerning the applicant's commitment or detention"); § 1914(a) ("the parties instituting any . . . proceeding in [district court must] pay a filing fee of $120, except that on application for a writ of habeas corpus the filing fee shall be $5"); Habeas Corpus Rule 2(a) ("[T]he application shall be in the form of a petition").  Id.

standards to Nobles's petition.

II.

A.

Nobles claims the prosecution knowingly used false evidence against him when it introduced at trial an edited version of his taped confession that omitted remarks indicating Nobles did not remember certain details of the murders. Nobles argues that had the jury considered these remarks, it could have found that, because of mental impairment from drugs and alcohol, he had not deliberately committed the murders.[11] He further contends that in closing argument the prosecutor compounded the misrepresentation by emphasizing the lack of evidence that Nobles had been unaware of his actions. For these reasons, Nobles concludes that he was denied the fundamentally fair and impartial trial guaranteed him by the Due Process Clause of the Fifth Amendment.

To establish a due process violation based on the State's knowing use of false or misleading evidence, Nobles must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Giglio v. United States, 405 U.S. 150, 153-154 (1972); Boyle v. Johnson, 93 F.3d 180, 186 (5th Cir. 1996). Evidence is "false" if, inter alia, it

---

[11]At the punishment phase of the trial, the jury responded "yes" to Special Issue Number 1, which asked if the jury had found that Nobles committed the murders "deliberately and with the reasonable expectation that the death of [the victims] would result." See Texas Code Crim. Proc. Ann. art. 37.071(b)(3) (West 1981). Counsel for Nobles argued at the punishment phase that Nobles had been temporarily insane during the murders due to the combined effect of drugs and alcohol.

is "specific misleading evidence important to the prosecution's case in chief." See Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). False evidence is "material" only "if there is any reasonable likelihood that [it] could have affected the jury's verdict." Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996), cert. denied, 117 S.Ct. 773 (1997).

The state habeas court denied this claim, finding that "[Nobles's] allegations do not suggest . . . the presentation of false evidence by the State." The district court observed that the state court addressed the "falsity" of the evidence but made no findings as to its "materiality." The district court then found that the edited confession "was, at least to some degree, misleading in an important way," but ruled that Nobles's claim failed the "materiality" prong of the Giglio test. Specifically, the district court found that Nobles's asserted memory loss was not credible given his detailed descriptions of trivial events before and after the murders, and that, in any case, such evidence was cumulative of other evidence presented to the jury.[12] Thus, the court found no "reasonable likelihood the jury would have returned a different verdict at the guilt or punishment stages of trial if it had heard the unedited confession." Nobles v. Johnson, No. A95-

---

[12]For example, at the punishment phase the jury heard the testimony of Pastor Charles Hyde and Assistant Pastor Frank McElhenney who had both spoken to Nobles shortly after the murders. They testified that Nobles had admitted that he had trouble recalling whether he had actually killed anyone. Further, the edited confession, admitted during the guilt/innocence phase of the trial, "retained numerous allusions to the fragmented state of Nobles's memory." Nobles, mem. op. at 18.

10

CA-703 SS, mem. op. at 19 (W.D.Tex. Dec. 19, 1996).[13]

### 1.

We need not decide whether the edited confession constituted "false evidence" under Giglio, because we agree with the district court that the confession, even if "false," was not "material," because it could not have reasonably affected the jury's determination that Nobles deliberately committed the murders.

Whether false evidence is "material" under Giglio is a mixed question of law and fact. United States v. Bagley, 473 U.S. 667, 679 n.8. (1985); Napue v. Illinois, 360 U.S. 264, 271-72 (1959). When reviewing a mixed question of law and fact under the AEDPA, a federal court may grant habeas relief only if it determines that the state court decision rested on "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," to the facts of the case. 28 U.S.C. § 2254(d)(1)(West 1997); see Drinkard, 97 F.3d at 767-68. An application of law to facts is unreasonable "only when it can be said that reasonable

---

[13]Nobles asserts that the district court applied an incorrect materiality standard by requiring a showing that the jury *would* have reached a different result because of the false evidence. See Westley, 83 F.3d at 726 (requiring a showing of a reasonable likelihood that the false testimony *could* have affected the jury's verdict). We observe that the district court's able memorandum opinion cited to Westley and recited the proper standard for materiality. See Nobles, mem. op. at 12. Nothing in the district court's analysis, save the one sentence cited by Nobles, indicates that it applied a more stringent standard than Westley requires. Finally, we observe that, even if the district court applied the wrong standard, we are free to substitute the correct one. Baker v. Metcalfe, 633 F.2d 1198, 1201 (5th Cir. 1981). As our discussion, infra, demonstrates, we would find in any case no reasonable possibility that the allegedly false evidence *could* have had any effect on the jury's findings.

jurists considering the question would be of one view that the state court ruling was incorrect." Drinkard, 97 F.3d at 769.

Before applying amended § 2254(d)(1), we must first determine whether Nobles's Giglio claim was "adjudicated on the merits" in the state court proceedings. See 28 U.S.C. § 2254(d)(West 1997). We feel some reservation about applying the more stringent AEDPA standards to this claim because we are not convinced that the state habeas court sufficiently addressed Nobles's Giglio claim. As the district court observed, the state habeas court did not address the "materiality" prong of Giglio but simply ruled, without evidentiary hearing, that "applicant's allegations do not suggest ... the presentation of false evidence by the state."[14]

We need not determine, however, whether the state habeas court sufficiently adjudicated Nobles's Giglio claim on the merits for purposes of amended § 2254(d), because we find that the allegedly misleading edited confession was not "material" even applying the pre-AEDPA de novo standard of review. See Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997); 28 U.S.C. § 2254(d)(West 1994).

Nobles claims the prosecution selectively edited his confession to omit portions which supported his defense of mental

---

[14]Cf. Williams, 1997 WL 612739, at *7 (finding sufficient adjudication on the merits where state court conducted evidentiary hearing and made specific findings on issue); Moore v. Johnson, 101 F.3d 1069, 1075 (5th Cir. 1996)(state court made "full and fair" adjudication on the merits where it conducted evidentiary hearing, heard testimony and entered detailed findings of fact and conclusions of law in support of judgment); Drinkard, 97 F.3d at 768 ("no question" that claim was adjudicated on the merits where state court entered findings of fact and conclusions of law as to issue).

impairment.  His abridged confession, Nobles contends, presented to the jury a "more inculpatory statement" than his actual, unedited confession.  Nobles offers as a primary example the following excerpt heard by the jury:

> I remember going out for a walk so I could catch my breath.  I did have a knife in my hand and I felt the warmth hit my hand.

The unedited version reads as follows:

> Okay, well anyway at the point that I got back home and I walked out the door I don't remember.  I remember going out for a walk so I could catch my breath.  The next thing I remember was getting kicked in the face and hearing a girl scream it had to be a woman scream and I did not lunge out and for some reason I had a knife in my hand.  I did have a knife in my hand because I did not reach out and stab anybody but I felt somebody run at me after I got kicked or hit or whatever but somebody moved into me and I felt the warmth hit my hand.

Nobles contends this example, and others like it, show that the prosecution cobbled together unrelated bits of his confession to present a misleading picture of his culpability.[15]

Assuming that the edited confession constituted "false

---

[15]The prosecution's asserted reason for introducing an edited confession is far less malevolent.  At the time of Nobles's trial, the prosecution was unclear about the viability of the Texas "voucher rule," a rule of evidence providing that any exculpatory material introduced by the State and not directly or indirectly disproved by it is binding upon it.  See, e.g., Palafox v. State, 608 S.W.2d 177, 181 (Tex. Crim. App. 1979).  At the time of Nobles's trial, the Texas Court of Criminal Appeals had clearly indicated, albeit in dicta, that the common law voucher rule had been abrogated by Texas Rule of Evidence 607 (permitting a party to impeach its own witness).  See Ibanez v. State, 749 S.W.2d 804, 807 n.3 (Tex. Crim. App. 1986).  Russeau v. State, 785 S.W.2d 387, 390 (Tex. Crim. App. 1990) subsequently held that Rule 607 abolished the voucher rule.

evidence," we must ask if there is any reasonable likelihood that the false evidence could have affected the jury's determination that Nobles deliberately committed the murders.  See Westley, 83 F.3d at 726.  We find none.

We first observe that the edited confession is replete with references both to Nobles's failure to remember significant portions of the murders and also to his generally fragmented state of mind.[16]  Additionally, other witnesses testified that Nobles told them he had taken drugs and could not remember what happened on the night of the murders.[17]  There was also evidence that Nobles ingested the drugs and alcohol some seven to ten hours before the murders;  that Nobles drove around with O'Brien after taking the drugs and spoke rationally to her about a business venture; and, that Nobles wore gloves during the murders and afterwards disposed

---

[16]For example, the edited version contains Nobles's following response, when asked whether one of his female victims said anything to him during the attack:

> No.  And then she kept -- she just screamed, and screamed, and screamed, and screamed.  And then the next thing I remember somebody else was screaming so I ran into another room.  And it was another girl who started hitting me.  And I remember this girl had dark hair because somebody had kept the lights on.  And she was hitting on me.  I was lunging at her with the knife.

When asked whether he remembered stabbing himself, Nobles responded:

> I think so.  And the next thing I remember is running out the door.  I don't remember getting home.

[17]Marlly O'Brien, Pastor Charles Hyde and Assistant Pastor Frank McElhenney testified to that effect.  See supra note 12.

14

of the evidence of his crime.  Given the evidence of mental impairment in the edited confession and the other evidence of the deliberateness of Nobles's acts, we find no reasonable likelihood that the allegedly misleading edited confession could have affected the jury's determination.[18]

2.

We offer, as did the district court, an alternative basis for rejecting Nobles's due process claim.  During trial, Nobles's counsel objected to the manner in which the State introduced the edited confession.[19]  During the ensuing bench conference, the trial judge gave defense counsel the opportunity to compare the edited and unedited versions, and also specifically instructed counsel that he had "an absolute right pursuant to [Texas Rule of Criminal Evidence] 106 to complete the record" if he so desired.  Nobles's counsel chose not to do so.

---

[18]Nobles's contention that the prosecutor capitalized on the omissions by emphasizing there was no evidence of mental impairment has no merit.  We find, as did the district court, that the prosecutor made legitimate comments on the evidence.  The prosecutor argued  (1) that the amount of time between Nobles's ingestion of the drugs and the murders cast doubt on his temporary insanity argument; and, (2) that the fact that Nobles wore gloves and covered up the evidence of his crime showed that he knew what he was doing was wrong.  Viewing his remarks in their proper context, the prosecutor was merely arguing that the evidence showed Nobles knew what he was doing was wrong, i.e., that he was not temporarily insane due to intoxication.  In his brief, Nobles ironically takes the prosecutor's comments out of context in trying to show he was commenting directly on the omitted portions of Nobles's confession.

[19]Nobles's counsel objected to the State's "vouching" for those portions of the confession it sought to admit, asserting the voucher rule had been abrogated by Texas Rule of Criminal Evidence 607.  See discussion supra note 15.

15

We find that Nobles's counsel waived any error regarding the edited confession, since he had the unedited version in his possession and chose not to enter it into evidence. Nobles cannot now claim that the introduction of the edited version violated his right to due process when his trial attorneys possessed, and chose not to use, the very evidence that would have corrected the asserted misrepresentation. See United States v. Sutherland, 656 F.2d 1181, 1203-04 (5th Cir. 1981)(denying claim of prosecutorial misconduct because, *inter alia*, defense counsel possessed impeaching grand jury testimony of Government witness but failed to use it, and also denying new trial for Brady violation because exculpatory evidence was made available to defense).

B.

Nobles also claims that trial counsel's failure to present his unedited confession to the jury denied him the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. He argues that counsel's deficient performance resulted, at the guilt phase of trial, in denial of an instruction on the lesser-included offense of voluntary manslaughter. He also contends that had the jury been able to consider his unedited confession during the punishment phase, it reasonably could have found Nobles had not acted deliberately. Nobles also argues there was no conceivable tactical reason at either phase for counsel's failure to introduce the unedited confession.

1.

To prevail on this claim, Nobles must show (1) that counsel's

16

performance was deficient, and (2) that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Washington v. Johnson, 90 F.3d 945, 953 (5th Cir. 1996).   Performance is deficient when counsel's representation falls below an objective standard of reasonableness.  Strickland, 466 U.S. at 688; Washington, 90 F.3d at 953.  Deficient performance is prejudicial when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different;  a reasonable probability is one sufficient to undermine confidence in the outcome.   Strickland, 466 U.S. at 694; Washington, 90 F.3d at 953.

Both prongs of the Strickland test involve mixed questions of law and fact.  Strickland, 466 U.S. at 698.  Under the AEDPA, a federal court will thus not grant a writ of habeas corpus unless the state court's conclusions involved an "unreasonable application" of clearly established federal law as determined by the Supreme Court.  See Carter v. Johnson, 110 F.3d 1098, 1110; Moore, 101 F.3d at 1075-76; 28 U.S.C § 2254(d)(1).  An application of federal law is "unreasonable" if it is "so clearly incorrect that it would not be debatable among reasonable jurists." Drinkard, 97 F.3d at 769.

### 2.

The state habeas court concluded that, because the portions omitted from Nobles's proffered confession would not have supported a voluntary manslaughter charge under Texas law, Nobles had not demonstrated prejudice from counsel's alleged error.  We cannot say

17

that the state court's conclusion involved an unreasonable application of the Strickland v. Washington test.

Nobles's claim that the portions omitted from the confession would have supported a voluntary manslaughter charge is devoid of merit. At the time of the murders, one was guilty of voluntary manslaughter in Texas if one committed what would otherwise be murder "under immediate influence of sudden passion arising from adequate cause." Tex. Penal Code Ann. § 19.04 (West 1974).[20] Voluntary manslaughter is a lesser-included offense of capital murder; a defendant is entitled, upon request, to the lesser-included charge if "it is included within the proof necessary to establish the offense charged" and if "there [is] some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." See Aguilar v. State, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

The omitted portions of Nobles's confession simply fail to demonstrate either the "sudden passion" or "adequate cause" necessary to support a voluntary manslaughter charge. The portions in which Nobles states that one of the victims "kicked him in the face" or "kept hitting him" show, at most, the victims' attempts to ward off Nobles's vicious attack. Texas courts have repeatedly held that when a defendant initiates a criminal episode, a victim's

---

[20]"Sudden passion" refers to "passion directly caused by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Id. "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Id.

18

attempts to defend himself will not constitute "adequate cause" from which sudden passion will arise for purposes of voluntary manslaughter. See, e.g., Adanandus v. State, 866 S.W.2d 210, 231 (Tex.Crim.App. 1993), cert. denied, 510 U.S. 1215 (1994); Vuong v. State, 830 S.W.2d 929, 939 (Tex.Crim.App.), cert. denied, 506 U.S. 997 (1992).[21] We further note that parts of Nobles's confession presented to the jury contained similar references to the victims' striking Nobles.

Because the omitted portions of Nobles's confession could not have conceivably supported a voluntary manslaughter charge under Texas law, Nobles can demonstrate no prejudice at the guilt phase resulting from counsel's allegedly deficient performance.

3.

Nobles also claims that counsel's deficient performance prejudiced him at the punishment phase, in that the jury could reasonably have found from the omitted portions of the confession that Nobles did not deliberately kill his victims. The state habeas court found that, even assuming counsel's deficient performance, Nobles failed to demonstrate prejudice.[22] Given the

_____

[21]We agree with the district court that, insofar as Nobles asks us to review the state court's application of state law, his claims are outside the scope of federal habeas review. See Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993). We thus address whether the omitted evidence would have supported a voluntary manslaughter charge under Texas law only in the context of Nobles's Sixth Amendment ineffective assistance of counsel claim (i.e., to demonstrate that Nobles suffered no prejudice from his counsel's alleged error).

[22]The state habeas court took a wholly unsympathetic view of Nobles's arguments regarding his unedited confession:

19

cumulative nature of the omitted evidence, the essential unbelieveability of Nobles's asserted memory loss, and the otherwise overwhelming evidence of deliberateness, we do not find the state court's determination to be an unreasonable application of Strickland.

C.

Nobles also claims that he was denied the effective assistance of counsel because his attorneys failed to present at the punishment phase a sufficient amount of the mitigating evidence in their possession regarding Nobles's traumatic childhood and his history of drug abuse and mental illness. Nobles argues that this unprofferred evidence could have led the jury to conclude that Nobles did not commit his crimes deliberately. See discussion supra Part II.A. Respondent argues that Nobles did not raise this ineffective assistance of counsel claim in the state courts and has thus failed to exhaust available state remedies. Furthermore, since the Texas court to which Nobles would present this claim would now find it barred under the Texas abuse-of-writ doctrine, Respondent contends Nobles has procedurally defaulted for purposes of federal habeas review.

---

The gist of the applicant's omitted statements [is] to the effect that he for some reason unknown to himself found himself in another's house in the dark of night where women began to scream and cast their bodies upon his knife which he held in his hand also for some reason unknown to him.

The state court thus found neither deficient performance in counsel's failure to introduce the unedited confession nor prejudice resulting therefrom.

20

1.

A state prisoner normally must exhaust all available state remedies before he can apply for federal habeas relief. See Ex parte Royall, 117 U.S. 241, 251 (1886).[23] To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts. Picard v. Connor, 404 U.S. 270, 275-76 (1971). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. Anderson v. Harless, 459 U.S. 4, 6-7 (1982); Vela v. Estelle, 708 F.2d 954, 958 (5th Cir. 1983).

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); see Harris v. Reed, 489 U.S. 255, 262-63 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1977). A procedural default also occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally

_____

[23]See 28 U.S.C. §§ 2254(b) and (c)(West 1994); see also 28 U.S.C. § 2254(b)(West 1997).

21

barred." Coleman, 501 U.S. at 735 n.1.

2.

Nobles admits that in his state habeas proceeding he did not claim ineffective assistance of counsel based on failure to introduce mitigating evidence. Instead, Nobles asserted the related Sixth Amendment claim that he had been denied the effective assistance of a competent court-appointed psychiatrist. See Ake v. Oklahoma, 470 U.S. 68, 83 (1985). On appeal, Nobles urges us to entertain his re-postured ineffective assistance of counsel claim because the "gist" of it, and the factual issues, are the same as those involved in his ineffective psychiatric assistance claim. The district court rejected this argument, finding that the claims implicate "two wholly different inquiries" and that Nobles thus did not fairly present his ineffective assistance of counsel claim to the state courts. We agree with the district court.

To meet the exhaustion requirement, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." Anderson, 459 U.S. at 6. Rather, the federal habeas petitioner must have provided the state courts with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Id., quoting Picard, 404 U.S. at 276-77. Nobles's argument to the state habeas court that he was not provided with competent psychiatric assistance did not give that court a "fair opportunity" to consider the factually related but legally distinct ineffective assistance of counsel claim he now presses upon us.

22

In his state habeas petition, Nobles based his due process claim on the "lack of a <u>reliable mental health</u> evaluation by his state-appointed experts <u>in competently</u> investigating petitioner's background to discover a mother-lode of information indicative of life-long mental disorders." Nobles primarily[24] relied on the Supreme Court's decision in <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985), which recognized an indigent defendant's due process right to a competent psychological evaluation when his sanity would be a significant factor at trial. <u>Ake</u>, 470 U.S. at 83. Nobles asserted that, because of the failure of his court-appointed psychiatrist to conduct a competent investigation into his traumatic past, the jury did not hear evidence that, during the murders, Nobles was in the grip of a dissociative episode and was thus not acting deliberately. The state habeas court rejected Nobles's claim, finding that he had provided no "rational basis for finding that the psychiatrist ... was incompetent or performed incompetently."

In his federal habeas petition, Nobles shifted focus from the

[24]Nobles did allude twice in his state habeas petition to the connection between competent psychiatric assistance and the effective assistance of counsel. He cited <u>Blake v. Kemp</u>, 758 F.2d 523 (11th Cir. 1985), which recognized that a defendant's right to the effective assistance of counsel was impaired by the State's withholding of probative evidence from the psychiatrist ordered to evaluate the defendant's sanity. <u>Blake</u>, 758 F.2d at 532. He also cited <u>United States v. Edwards</u>, 488 F.2d 1154 (5th Cir. 1974), which emphasized the "particularly critical interrelation between expert psychiatric assistance and minimally effective assistance of counsel." <u>Edwards</u>, 488 F.2d at 1163. Nobles relied on <u>Blake</u> and <u>Edwards</u>, however, only to demonstrate that "a competent mental health expert is essential to an effective defense," and not to malign his trial counsel's performance. Those references, then, were insufficient to fairly present to the state court the substance of the ineffective assistance claim urged in Nobles's federal petition. <u>See</u> <u>Picard</u>, 404 U.S. at 275.

23

alleged incompetence of his court-appointed psychiatrist to that of his trial counsel.[25] He claimed that counsel failed to present most of the available mitigating evidence regarding Nobles's childhood and history of mental illness.[26] Given that one of the primary issues the jury had to resolve during the punishment phase was deliberateness, Nobles asserts there was no conceivable reason for counsel's failure to introduce all available evidence of his troubled psyche.

Nowhere in his state habeas petition did Nobles claim that his trial counsel provided ineffective assistance regarding the introduction of mitigating evidence. He focused exclusively on the allegedly incompetent investigation performed by his court-appointed psychiatrist. Only in his federal habeas petition did Nobles call into question his attorneys' performance on this ground.

In addressing a due process claim based on ineffective

---

[25]In his federal petition, Nobles abandons all reference to his psychiatrist's allegedly incompetent evaluation. Nobles merely mentions in passing that the defense "was assisted by state-funded psychiatrist, Dr. George Pazdral." Indeed, despite Nobles's assertions in state court that, due to Dr. Pazdral's deficient evaluation, counsel was deprived of "an explanation for the crime which would have completely negated the state's proof of intent," Nobles now claims, in federal court, that "[n]early all of the now-known evidence of Mr. Nobles's nightmarish upbringing and psychological disorders was available to trial counsel."

[26]Nobles asserts, for example, that counsel failed to introduce evidence:  that, as a child, Nobles was frequently beaten by his mother and step-father; that Nobles was, at various times, diagnosed with schizophrenia, neurological impairment and impulse disorder; and, that Nobles had experienced episodes of explosive rage and auditory hallucinations in which he heard the voice of a young man instructing him to hurt people.

*psychiatric* assistance, a court must inquire whether the defendant was provided access to a "competent psychiatrist" and whether that psychiatrist competently examined the defendant and "assist[ed] in evaluation, preparation and presentation of the defense." Ake, 470 U.S. at 83. By contrast, a court assessing whether a defendant was provided with the effective assistance of *counsel* must focus on the reasonableness of counsel's decisions and in particular whether allegedly deficient performance falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 688-91. The court's focus does not change even when the ineffective assistance of counsel claim is predicated on counsel's failure to introduce mitigating psychological evidence. See Black v. Collins, 962 F.2d 394, 403 (5th Cir. 1992)(finding reasonable counsel's decision not to present evidence that defendant suffered from Post-Traumatic Stress Syndrome in light of defense strategy at punishment phase).[27]

---

[27]Nobles relies on the Eighth Circuit's decision in Guinan v. Armontrout, 909 F.2d 1224 (8th Cir. 1990) for the proposition that presentation of a claim in state court "similar enough" to the federal claim will save the federal claim from being procedurally barred. Guinan is distinguishable on its facts, however. In Guinan, petitioner asserted at the state level a due process claim based on denial of a mental exam to determine his competency. He subsequently asserted in his federal petition two due process claims, based on the denial of a psychiatric examination and on the denial of possible mitigating evidence. The court found the latter two claims "obviously closely related" to the first claim and thus held that "the due process claim as a whole was adequately presented to the state courts." Guinan, 909 F.2d at 1227. Significantly, the court observed that, regardless of which aspect of his due process claim was considered, the court would engage in the same legal analysis -- i.e., the analysis prescribed by Ake v. Oklahoma. Id. In Nobles's case, by contrast, his distinct claims implicate two different legal analyses.

We find more apposite the case of Lamberti v. Wainwright, 513

25

In sum, Nobles "advance[d] in federal court an argument based on a legal theory distinct from that relied upon in state court," and therefore failed to satisfy the exhaustion requirement. Vela, 708 F.2d at 958 n.5, citing Anderson, 459 U.S. at 7.

3.

As noted above, the district court also found Nobles's claim barred by the doctrine of procedural default. The court reasoned that because Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a)[28] would prohibit Nobles from filing a successive habeas petition at the state level, Nobles had procedurally defaulted his ineffective

---

F.2d 277 (5th Cir. 1975). There, the petitioner asserted in his state habeas petition that his untimely appeal to the state appellate court was due to the trial court's unauthorized and allegedly misleading extension of time in which to file a motion for new trial. In federal court, petitioner asserted for the first time that his late appeal was the product of his attorneys' deficient performance. We found that petitioner's ineffective assistance claim was not the "substantial equivalent" of his first claim, based on the actions of the trial judge, even though the basic facts underlying both claims were similar. Lamberti, 513 F.2d at 281-83. Thus, petitioner failed to meet the exhaustion requirement. Id.

[28]Article 11.071 § 5(a) provides in pertinent part:

If an original application for a writ of habeas corpus is untimely or if a subsequent application is filed after filing an original application, a court may not consider the merits of or grant relief on the subsequent or untimely original application unless the application contains sufficient specific acts establishing that:

* * *

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071 or 37.0711.

26

assistance of counsel claim.  See Coleman, 501 U.S. at 735 n.1.

Were Nobles to file a successive habeas petition in the Texas state courts, his application would be governed by § 5(a) of article 11.071.  See Ex parte Davis, 947 S.W.2d 216, 222 (Tex.Crim.App. 1996)(McCormick, J., concurring).[29]  That section would prohibit a Texas court from considering the successive petition on the merits, unless it met certain exceptions. Id.  The only exception arguably applicable here would allow consideration of the successive petition if it contained

> sufficient specific facts establishing that
> ... by clear and convincing evidence, but for
> a violation of the United States Constitution
> no rational juror would have answered in the
> state's favor one or more of the special
> issues that were submitted to the jury in the
> applicant's trial under Article 37.071 or
> 37.011.[30]

Tex. Code Crim. P. Ann. art. 11.071 § 5(a)(3)(West 1997).

After considering Nobles's Sixth Amendment claim based on counsel's failure to sufficiently introduce mitigating evidence, we fail to discern evidence of any constitutional violation whatsoever, much less a constitutional violation that impacted the jury's findings at the punishment phase.  The so-called "mitigating" psychological evidence Nobles refers to was at best

---

[29]"If an applicant has previously filed a habeas corpus application ... an applicant must establish one of the exceptions contained in Article 11.071, Section 5(a), to permit this Court to consider the merits of a successive habeas corpus petition...." Id.

[30]Articles 37.071 and 37.0711 govern sentencing proceedings in death penalty cases.  See Tex. Code. Crim. P. arts. 37.071 and 37.0711 (West 1997).

27

double-edged:  not to present evidence of Nobles's volatile mental state, especially given counsel's decision to emphasize Nobles's non-violent history,[31] was clearly reasonable trial strategy.  See Black, 962 F.2d at 403 (finding that, where counsel chose to emphasize defendant's non-violent history, decision not to present all evidence tending to negate "deliberateness" element not unreasonable); see also Green, 116 F.3d at 1123.  Even assuming counsel's deficient performance, Nobles could not in any case demonstrate prejudice, given that the evidence of his childhood trauma and history of mental illness was cumulative of other evidence actually presented during the punishment phase.  We thus find that a Texas court, presented with a successive state habeas petition on this claim, would find it barred under article 11.071 § 5(a).

Given that article 11.071 is "a new statute, largely uninterpreted by state cases," we provide an alternate basis for applying the doctrine of procedural default.  See Emery v. Johnson, No. 96-20826, 1997 WL 564153, at *3 (5th Cir. Sept 10, 1997); Mangaroo v. Nelson, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989).  The Texas abuse-of-writ doctrine[32] prohibits a second habeas petition,

---

[31]As the district court pointed out, at the punishment phase Nobles's counsel chose to focus on the second special issue, which asked the jury whether it found beyond a reasonable doubt "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." See Texas Code Crim. P. Ann. art. 37.071(b)(2)(West 1981).

[32]We note that in his concurring opinion in Davis, Judge McCormick, joined by Judges White, Meyers, and Keller, expressed the opinion that "[t]he successive writ provisions of Article 11.071, Section 5(a), for the most part are merely a legislative

absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition.    See Ex parte Barber, 879 S.W.2d 889, 891 n.1 (Tex.Crim.App. 1994)(en banc)(plurality opinion).    That doctrine represents an adequate state procedural bar for purposes of federal habeas review.    See Emery, 1997 WL 564153, at *3; Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995).    Given that Nobles has cited no cause for his failure to raise his Sixth Amendment claim in his initial state habeas petition, the Texas abuse-of-writ doctrine would constitute an independent and adequate bar to a successive habeas petition.[33]

Thus, whether we consider article 11.071 or the abuse-of-writ

codification of the judicially created "abuse of the writ" doctrine."    Ex parte Davis, 947 S.W.2d at 226 (McCormick, J., concurring).    In view of the dearth of judicial interpretation of Article 11.071 § 5(a), however, we cannot definitively say, and therefore do not venture to guess, whether that section was intended to codify the preexisting abuse-of-writ doctrine.    We provide an alternate basis for finding procedural default, then, assuming that the abuse-of-writ doctrine is still viable in light of Article 11.071 § 5(a).

[33]We recognize that a habeas petitioner can overcome a procedural default by showing cause for and actual prejudice resulting from the default.    See Wainwright, 433 U.S. at 86-91. Nobles has not, however, advanced any cause for his failure to raise in his initial state habeas petition his Sixth Amendment claim based on counsel's failure to introduce mitigating evidence. We also note that in Mata, we identified a new "cause and actual innocence" standard imposed by amended § 2254(e)(2), applicable when a habeas petitioner "has failed to develop the factual basis for a claim in State court proceedings."    See Mata, 99 F.3d at 1271 & n.36.    We observe in passing that Nobles could not meet the § 2254(e)(2) standard because, *inter alia*, it requires a showing by clear and convincing evidence that "but for constitutional error, no
reasonable factfinder would have found the applicant guilty of the underlying offense."    See 28 U.S.C. § 2254(e)(2)(B).

29

doctrine, Nobles has procedurally defaulted his unexhausted Sixth Amendment claim.

4.

The AEDPA amended 28 U.S.C. § 2254(b) to allow a federal court to *deny* an application on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2)(West 1997). We note that amended § 2254(b)(2) is permissive ("[a]n application ... may be denied ..."). The district court, after finding Nobles's claim procedurally defaulted, found in the alternative that his claim would not have succeeded on the merits. We review the district court's resolution of this mixed question of law and fact *de novo*. See Green, 116 F.3d at 1122.

We agree with the district court that Nobles's allegations fail to demonstrate his counsel's deficient performance, and that, in any case, Nobles could not show prejudice resulting therefrom. As the district court observed, "mitigation is in the eye of the beholder." While the unproffered evidence of Nobles's childhood abuse and emotional problems may have helped Nobles on the deliberateness issue, the same evidence could have strengthened the prosecution's argument that Nobles posed a continuing threat to society. Thus, counsel's decision not to offer such evidence did not constitute deficient performance. Furthermore, the unproffered evidence was cumulative and thus could not have affected the outcome of the punishment phase.

**CONCLUSION**

30

For the foregoing reasons, we AFFIRM the district court's denial of Nobles's petition for writ of habeas corpus.