United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 25, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-20656

_____

KEVIN CHRISTOPHER KINCY,

Petitioner - Appellant,

versus

DOUGLAS DRETKE, Director,
Texas Department of Criminal Justice -
Institutional Division,

Respondent - Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas
Civil Docket No. H-02-CV-1848

---

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Kevin Christopher Kincy was convicted of capital murder and sentenced to death for murdering Jerome Harville during the course of a robbery. After exhausting state remedies, Kincy filed a § 2254 petition for a writ of habeas corpus in federal district court raising eight grounds for relief. The district court granted the state's motion for summary judgment on all eight issues,

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

dismissed Kincy's petition, and refused to grant a certificate of appealability ("COA") on any issue raised.

Kincy now seeks a COA from this court on five issues: (1) whether he was denied due process and a fair trial because the trial court upheld a witness's invocation of the privilege against self-incrimination; (2) whether he was denied due process because he has evidence of actual innocence; (3) whether he was denied due process because of the State's suppression of impeachment evidence pertaining to witness John Byrom; (4) whether he was denied due process because the State presented materially false evidence through two witnesses; and (5) whether his appellate counsel provided constitutionally ineffective assistance by failing to raise as error a witness's invocation of her privilege against self-incrimination. We deny a COA on each claim.

**BACKGROUND**

Terkisha Dawson testified at Kincy's trial that prior to the murder, Kincy and his cousin, Charlotte Kincy, spoke of their plan to rob a man and steal his car and possessions. Dawson further testified that the plan was for Charlotte, who was romantically involved with the man and had been accepting money from him, to seduce the man in his home to prevent him from setting his alarm. Kincy would then enter the home and, according to Dawson's testimony, kill the man.

2

In March 1993, Byron Brown, Kincy's co-worker, accompanied Kincy and Charlotte to a house. Brown testified that upon entering a bedroom, he observed a man lying on the floor who he later realized was dead. Brown further testified that he became frightened and left the house. On March 26, 1993, co-workers of Jerome Harville became concerned because of his absence from work. They eventually notified the sheriff's department and Harville was discovered in his home, having been fatally shot in the head and stabbed several times. In addition, Harville's home had been ransacked and his Honda Accord, among other items, had been stolen. The police uncovered prints in the home consistent with a person wearing gloves.

Dawson further testified that Kincy explained to her how he surprised Harville in his home and shot him in the head. Dawson also testified that Charlotte admitted to stabbing Harville several times. Keenan Mosley, another of Kincy's cousins, also testified that Kincy displayed a gun he had stolen from Harville, made a list of pros and cons concerning his chances of getting caught, and mentioned having worn gloves. In addition, Mosley testified that she observed Kincy with a Honda Accord and a large amount of home appliances and equipment.

Police linked Kincy to the crime after locating both the murder weapon and Harville's stolen gun. On April 6, 1993, an FBI agent spotted Kincy driving Harville's Honda Accord on

3

Interstate 10 in Texas near the Louisiana border. Police apprehended Kincy in Louisiana after a lengthy high-speed chase.

Both Kincy and Charlotte were charged with capital murder. However, the State agreed to reduce Charlotte's charge to first degree aggravated robbery in exchange for Charlotte's guilty plea and her promise to testify against Kincy at trial. The plea bargain further stated that, should Charlotte choose not to testify or fail to testify truthfully, the agreement would be void and the State would be free to reinstate the capital murder charges. The plea bargain did not purport to guarantee Charlotte a specific sentence. However, Charlotte was not called as a witness in the guilt/innocence phase of Kincy's trial. Nevertheless, the jury convicted Kincy of capital murder.

During the punishment phase of the trial, Kincy indicated that he wished to call Charlotte as a witness. Charlotte was sworn in and, on the advice of counsel, indicated her desire to invoke her Fifth Amendment privilege against self-incrimination. Kincy's attorney objected, arguing that by pleading guilty Charlotte had waived her Fifth Amendment privilege. The trial court disagreed and allowed Charlotte to invoke her privilege. Kincy's attorney then stated that, if she had testified, Charlotte would have verified that she was "the organizer, the planner, the schemer" behind the crime.

The jury sentenced Kincy to death, and he unsuccessfully appealed to the Texas Court of Criminal Appeals. Kincy v. State,

4

No. 72,246 (Tex. Crim. App. 1998) (unpublished). Once his conviction and sentence had been affirmed, Kincy filed a state habeas application in the trial court. Based on the trial court's findings of fact and conclusions of law and its own review, the Court of Criminal Appeals denied habeas relief. Ex parte Kincy, No. 50,266-01 (Tex. Crim. App. Nov. 21, 2001) (unpublished). On August 29, 2002, Kincy filed a petition for writ of habeas corpus in federal district court.

## DISCUSSION

Kincy's § 2254 habeas petition is subject to the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). See Penry v. Johnson, 532 U.S. 782, 792 (2001). AEDPA mandates that Kincy obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1) (2000). Indeed, "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

A COA will issue only when the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); Miller-El, 537 U.S. at 336. A petitioner achieves the requisite showing by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to proceed further." Id.

The Supreme Court has admonished that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim. . . ." Id. at 331. Rather, this court should engage in an "overview of the claims in the habeas petition and a general assessment of their merits." Id. at 336. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338.

Even if the petitioner succeeds in obtaining a COA, he is not necessarily entitled to habeas relief. "To prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)). Before this court may grant habeas relief under the "unreasonable application" standard, "the state court's application must be more than merely incorrect." Id. at 248. Rather, the more appropriate inquiry is whether the "state court's application of clearly established federal law was objectively unreasonable." Cotton v. Cockrell, 343 F.3d 746, 750 (5th Cir. 2003).

6

1.  <u>Witness's Invocation of Privilege Against Self-Incrimination and Ineffective Assistance of Counsel</u>

Kincy first seeks a COA with respect to the district court's failure to grant habeas relief based on the trial court's recognition of Charlotte Kincy's privilege against self-incrimination. As discussed <u>supra</u>, the State originally charged Charlotte with capital murder, but agreed to dismiss that charge and replace it with first degree aggravated robbery in exchange for Charlotte's guilty plea and promise to testify against Kincy at trial. The carrot came with a stick: if Charlotte failed to perform her end of the bargain in any way (by refusing to testify or testifying untruthfully), the capital murder charge would be reinstated. Moreover, the plea bargain did not purport to secure Charlotte a particular sentence. At the time of Kincy's trial, Charlotte had not yet been sentenced.

For whatever reason, the State chose not to call Charlotte as a witness during Kincy's trial. When called to the stand by Kincy during the punishment phase, Charlotte invoked her Fifth Amendment privilege against self-incrimination and refused to testify. To no avail, Kincy's counsel objected that by pleading guilty Charlotte had waived her Fifth Amendment rights. Charlotte exercised the privilege.[1] Kincy now contends that he was denied

---

[1]Kincy's counsel then proffered that Charlotte would have testified that she was the "organizer" of the crime and recruited Kincy to participate. In his federal habeas petition, Kincy

7

due process and a fair trial by the exclusion of Charlotte's testimony.

The Supreme Court has noted that "as a general rule, [] where there can be no further incrimination, there is no basis for the assertion of the privilege [against self-incrimination]." Mitchell v. United States, 526 U.S. 314, 326 (1999). This "principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final." Id. When, however, an individual enters a guilty plea but has not yet been sentenced, that individual "may have a legitimate fear of adverse consequences from further testimony" and may invoke the privilege against self-incrimination. Id.

In addition, courts of appeals that have considered the issue, including this circuit, have uniformly held that a codefendant who pleads guilty pursuant to a plea agreement retains his Fifth Amendment rights prior to being sentenced. See United

---

argues that Charlotte also would have testified that Kincy was acting in self-defense when he shot Harville. Kincy further argues that the State did not call Charlotte as a witness because it wanted to keep the jury unaware of the possible self-defense justification. To support this contention, Kincy points to a 1995 letter in which Charlotte asks Kincy to write a letter in aid of her efforts to obtain parole. Charlotte claims in the letter that Kincy was acting in self-defense when he shot Harville.

Kincy also points to a written and signed, but unsworn, statement by Charlotte that essentially echoes the events described in her 1995 letter. The statement was prepared by an investigator working for Kincy's counsel.

States v. Kuku, 129 F.3d 1435, 1437-38 (11th Cir. 1997); United States v. Hernandez, 962 F.2d 1152, 1161 (5th Cir. 1992); United States v. Lugg, 892 F.2d 101, 102-3 (D.C. Cir. 1989). The fact that the codefendant agrees, as part of the plea agreement, to testify against the accused does not affect his privilege against self-incrimination. A plea agreement, as opposed to formal statutory immunity, does not afford the prosecution the right to force a witness to testify. See Kastigar v. United States, 406 U.S. 441, 448-49 (1972) (formal statutory immunity allows the prosecution to compel the immunized witness to testify); Lugg, 892 F.2d at 103 (distinguishing plea agreements from formal immunity). Therefore, a witness may decide not to testify, irrespective of an agreement to the contrary, and the prosecution may not compel such testimony.

In this case, Charlotte entered into a plea agreement whereby she agreed to testify against Kincy. But because she had not yet been sentenced at the time of Kincy's trial and the plea agreement in no way guaranteed her a specific sentence, she retained her Fifth Amendment rights.[2] See Mitchell, 526 U.S. at 326. Neither the state, however, nor Kincy could require Charlotte

---

[2]Kincy's trial counsel proffered that Charlotte would testify to being the "organizer" of the crime. If this representation were true, Charlotte certainly possessed a legitimate fear that any testimony she might give concerning culpability could conceivably affect her yet-to-be-determined sentence. See Mitchell, 526 U.S. at 326.

to testify as a result of the contractual plea agreement alone. Reasonable jurists could not debate the district court's conclusion that Charlotte retained her Fifth Amendment privilege against self-incrimination. Further, the state courts' similar decisions cannot have been contrary to or an unreasonable application of federal law. We deny Kincy's application for COA on this claim.

Tied to this claim, Kincy seeks a COA based on the ineffective assistance of his appellate counsel for failing to attack the trial court's order allowing Charlotte to remain silent. An ineffective assistance claim is governed by the standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To succeed on his claim, Kincy must "prove that his counsel's performance was deficient and that the deficiency prejudiced his defense." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). An attorney's failure to raise a meritless argument cannot form the basis of an ineffective assistance claim because (a) such performance is not deficient, and (b) the result of the proceeding would not have been different had the issue been raised. Clark v. Collins, 19 F.3d 959, 966 (5th Cir.), cert. denied, 115 S.Ct. 432 (1994). Reasonable jurists could not disagree or find wrong the district court's decision that the state habeas court's rejection of this claim was not contrary to or an unreasonable application of federal law. We deny a COA on this issue.

10

2.  Actual Innocence Evidence

    Kincy next seeks a COA based on the district court's rejection of his actual innocence claim.  Kincy argues that Charlotte's 1995 letter and subsequent written statement prove that he acted in self-defense and is innocent of the crime of capital murder.[3]  However, it has long been the rule in this circuit that claims of actual innocence based on newly discovered evidence alone are not cognizable under federal habeas corpus.[4]  Herrera v. Collins, 954 F.2d 1029, 1034 (5th Cir. 1992), aff'd, 506 U.S. 390 (1993); Bryant v. Scott, 28 F.3d 1411, 1420 n.14 (5th Cir. 1994); Lucas v. Johnson, 132 F.3d 1069, 1074 (5th Cir. 1998).  Because reasonable jurists could not disagree or find wrong the conclusion

---

[3]Charlotte alleges that she and Kincy went to Harville's home because Harville owed Kincy money.  She further alleges that after telling Kincy he would give him the money, Harville pulled a gun and the two struggled.  Finally, Charlotte states that it was only after Harville said to Kincy "I'm going to kill you," that Kincy shot Harville.  Charlotte's written statements do not, among other things, explain why Charlotte subsequently stabbed the victim numerous times.

[4]It should also be noted that the Supreme Court has expressed its reluctance to rely on affidavit testimony in this regard because of the absence of cross-examination.  Herrera, 506 U.S. at 417.  In addition, the affidavits in the instant case, like those presented in Herrera, were issued years after the crime and resulting trials occurred.  Id.  Finally, no explanation has been given why Kincy, who was presumably aware of his self-defense justification, did not present that theory to the jury at his trial.

that Kincy's actual innocence claim is not cognizable, we deny his application for COA on this claim.[5]

3.    Suppression of Impeachment Evidence and Materially False Evidence

Finally, Kincy seeks a COA based on the alleged suppression of impeachment evidence pertaining to John Byrom and the State's alleged offer of materially false evidence provided through John Byrom and Keenan Mosley.  Kincy relies on affidavits from both Byrom and Mosley in which they state that they lied, at the behest of prosecutors, when giving their trial testimony. Kincy does not dispute that these claims were not presented to the state courts on direct appeal or state habeas review.

"Federal courts cannot grant habeas relief unless the applicant has presented the claims to the state court and exhausted the remedies available in state court."  Cotton, 343 F.3d at 755; 28 U.S.C. § 2254(b) (2000).  Kincy's failure to present these claims to the state courts renders them unexhausted.  Moreover, a "procedural default. . . occurs when a prisoner fails to exhaust

---

[5]While the district court noted that Kincy's actual innocence claim was not cognizable under federal habeas corpus, the court also believed the claim to be procedurally defaulted and therefore not deserving of further attention.  We do not address the district court's alternative ground for denying Kincy's petition for writ of habeas corpus because, as discussed supra, the actual innocence claim, standing alone, is not a cognizable claim in this circuit.  Thus, Kincy's substantive actual innocence claim is not an issue that "deserve[s] encouragement to proceed further."  Miller-El, 537 U.S. 336.

12

available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal citations and quotations omitted). Texas law requires habeas petitioners to present all of their state habeas grounds in the first petition.[6] TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a) (Vernon Supp. 2004). Article 11.071 has been held to be an adequate state procedural bar to federal review. Barrientes v. Johnson, 221 F.3d 741, 758-59 (5th Cir. 2000) (noting that article 11.071 codifies the Texas common law abuse of the writ doctrine); Muniz v. Johnson, 132 F.3d 214, 221 (5th Cir. 1998); Nobles, 127 F.3d at 423. Kincy's claims are therefore procedurally defaulted.[7]

A federal court may not consider a petitioner's defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Kincy attempts to prove cause

_____

[6]Narrow exceptions allow the state courts to entertain new claims on successive habeas petitions, however, Kincy does not argue that any of the exceptions would be applicable in his case.

[7]Indeed, Kincy does not dispute this fact in his brief to this court.

13

for his default by highlighting the inadequacy of the state corrective process as a whole.[8]

Recognizing that this circuit has held that ineffective assistance of state habeas counsel cannot serve as cause that excuses procedural default, Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir. 2001), Kincy attempts to construe his complaint as one against the state corrective process as a whole. In particular, Kincy complains that the Texas process results in the appointment of incompetent state habeas counsel because of the lack of guiding standards and that the Texas Court of Criminal Appeals has "abdicated" its role in the process. However, this court has also held unequivocally that "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." Beazley v. Johnson, 242 F.3d 248, 271 (5th Cir. 2001) (quoting Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999)) (finding petitioner's claim of ineffective state process not cognizable). Because reasonable jurists could not debate the conclusion that Kincy

---

[8]To prove that a fundamental miscarriage of justice has occurred, a petitioner may make a showing of actual innocence. Herrera, 506 U.S. at 404. In this regard, an actual innocence claim serves as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. Although Kincy makes a substantive claim of actual innocence, he does not argue that actual innocence constitutes a fundamental miscarriage of justice for the purposes of procedural default. The failure to raise an issue on appeal constitutes waiver of that argument. United States v. Thibodeaux, 211 F.3d 910, 912 (5th Cir. 2000). In any event, his only evidence of actual innocence consists of the highly debatable, unsworn statements of Charlotte. See fn. 3 supra.

14

failed to present cognizable claims of cause and prejudice that would save his procedurally defaulted claims, we deny a COA on these evidentiary issues.

## CONCLUSION

Because we **DENY** Kincy's application for COA on each of the issues raised, we lack jurisdiction to review the district court's denial of habeas relief.

**COA DENIED.**

15