**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-40633

ROBERT MORENO RAMOS,

Petitioner - Appellant,

VERSUS

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
For the Southern District of Texas

(99-CV-134)

February 14, 2002

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Mr. Robert Moreno Ramos was convicted of capital murder of his wife and two children and sentenced to death. He now seeks a Certificate of Appealability (COA) to pursue habeas relief in this court. In his request for a COA, Mr. Ramos argues (1) that the trial court erred in not instructing the jury that a life sentence

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

would mean that he was ineligible for parole for 35 years, (2) that the trial court erred in excusing a venireperson who expressed reluctance with regard to the death penalty, and (3) that the trial court erred in refusing Mr. Ramos's request for a lesser included offense of voluntary manslaughter. Mr. Ramos has also filed a motion in this court for reconsideration of this court's earlier denial of his request that this case be remanded to the district court. Because Mr. Ramos has failed to make a substantial showing of the denial of a constitutional right and has failed to show reason for remand, his COA request and his motion for reconsideration are denied.

## I.   FACTS AND PROCEDURAL HISTORY

In November 1991, Mr. Robert Moreno Ramos began an extramarital affair with Ms. Marisa Robledo, and in January 1992, they made plans to marry. Although Mr. Ramos was already married and had a family, he told Ms. Robledo that he was giving shelter to a widow and her two children.

On February 7, 1992, a neighbor heard a woman's scream and vulgar language emanating from the Ramos house. Over the next few days, members of the family's church visited the Ramos residence. Mr. Ramos told them that the family was moving to California to handle the affairs of his recently departed mother and that they

2

were too busy to say goodbye.[2]

On February 10, 1992, Mr. Ramos married Ms. Robledo. When Mr. Ramos's cousin inquired as to the whereabouts of his family on March 4, 1992, Mr. Ramos said they had died in a car accident and that the bodies had been cremated. Finally, after nearly two months of conflicting explanations as to his family's whereabouts, Mr. Ramos's sister-in-law alerted the police of the disappearance of Mr. Ramos's wife and children. On March 30, 1992, the police arrived at Mr. Ramos's home to question him about his missing family. Over the course of twenty minutes, Mr. Ramos gave several contradictory accounts of his family's whereabouts; Mr. Ramos told police that his family was in Austin, San Antonio, and Mexico. Mr. Ramos voluntarily accompanied officers to the police station where he was arrested on various traffic warrants.

On April 6, 1992, officers searched the Ramos home and discovered extensive blood evidence throughout the house, most notably the bedroom, hallway, and bathroom. All of the family's clothes, as well as the children's toys, had been secreted away in the attic. On April 7, 1992, Mr. Ramos told officers that, upon returning home one day in February, he found his wife and children dead. He further stated that a few days later, he dug a hole in his bathroom floor and buried them. He later changed his story, claiming that after finding his children dead and his wife mortally

_____

[2] Testimony at trial, however, revealed that Mr. Ramos's mother was still alive.

3

wounded from an apparently self-inflicted wound, he ultimately delivered the fatal blow to her head with a hammer.

Officers obtained a search warrant and exhumed the bodies of his wife and two children from underneath the newly-tiled floor in Mr. Ramos's bathroom. All victims died from blunt head injuries, most likely caused by blows from a hammer. A miniature sledge hammer with blood stains was recovered from Mr. Ramos's residence in Mexico. A forensic pathologist testified that all the victims died and were buried within a 12 to 24 hour time period and that it was very unlikely that the injuries to Mr. Ramos's wife were self-inflicted.

In 1993, Mr. Ramos was indicted for and convicted of the capital murder of his wife and two children. At the penalty phase and pursuant to Texas Criminal Procedure article 37.071, the jury was presented with two special issues concerning future dangerousness and mitigating circumstances. In response to the question of whether it was probable that Mr. Ramos would commit future violent act and would pose a continuing threat to society, the jury answered, "yes." In response to whether there were mitigating circumstances that would warrant a sentence of life imprisonment, rather than the death penalty, the jury answered, "no." The trial court sentenced Mr. Ramos to death. Had the jury answered the future dangerousness special issue negatively, however, the court would have been required to sentence Mr. Ramos

4

to life imprisonment, rather than death.[3]  Tex. Crim. Proc. Code art. 37.071 § (2)(e) (Vernon 1981).  Mr. Ramos's conviction and death sentence were subsequently affirmed on appeal, and the state habeas court denied relief.

On April 2, 1999, Mr. Ramos filed a motion for federal habeas corpus relief in the district court.  The state moved for summary judgment.  District Judge Vela adopted the magistrate's report and granted summary judgment to the state.  Mr. Ramos filed an application for a Certificate of Appealability (COA) in the district court.  The district court denied Mr. Ramos's petition for a COA, and Mr. Ramos now seeks a COA from this court.

## II.  ANALYSIS

A habeas petitioner cannot appeal the denial of habeas relief from the district court to the circuit court unless he obtains a COA.  28 U.S.C. § 2253(c)(1).  "Under AEDPA, a COA may not issue unless 'the applicant has made a substantial showing of the denial of a constitutional right.'" Slack v. McDaniel, 529 U.S. 473, 483 (2000) (citing 28 U.S.C. § 2253(c)(2)).  "When a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district

---

[3] In addition, had the jury answered the mitigating circumstances special issue affirmatively, a life sentence would have been imposed.

court's assessment of the constitutional claims debatable or wrong," or, at least, that the "issues presented were adequate to deserve encouragement to proceed further." Id. at 484; Moore v. Johnson, 225 F.3d 495, 500 (5th Cir. 2000). Although the nature of the penalty in a capital case is an appropriate consideration in evaluating a COA application, "the severity of the penalty does not, in and of itself, require the issuance of a COA. . . .  In capital cases, doubts as to whether a COA should issue must be resolved in favor of the petitioner." Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000); Lamb v. Johnson, 179 F.3d 352, 356 (5th Cir. 1999).

To obtain habeas relief, a petitioner must either demonstrate that the state court's decision "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Id. A state court's decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that

6

principle to the facts of the prisoner's case." Id. A state court's determination of factual issues are presumed correct and the applicant bears the burden of rebutting the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (1994).

A. Parole Eligibility

Mr. Ramos contends that the trial court violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by denying his request to instruct the jury that a sentence of life would have resulted in his being ineligible for parole for 35 years, when he would be approximately 73 years old.[4] Mr. Ramos contends that because he would not have been eligible for parole under a life sentence until such an advanced age, he was much less likely to constitute a future danger to society.

As stated by the United States Supreme Court, "[W]e generally will defer to a State's determination as to what a jury should and should not be told about sentencing. In a State in which parole is available, how the jury's knowledge of parole availability will affect the decision whether or not to impose the death penalty is speculative, and we shall not lightly second-guess a decision whether or not to inform a jury of information regarding parole."

---

[4] Pursuant to Art. 42.18, Sec. 8(b)(2) of the Texas Code of Criminal Procedure:
   If a prisoner is serving a life sentence for a capital felony, the prisoner is not eligible for release on parole until the actual calendar time the prisoner has served, without consideration of good conduct time, equals 35 calendar years.

7

Simmons v. South Carolina, 512 U.S. 154, 168 (1994). If, however, the defendant's future dangerousness is at issue and the state law prohibits the defendant's release on parole, due process requires the jury be informed of the defendant's parole ineligibility. Id. at 156; Shafer v. South Carolina, 121 S. Ct. 1266-67 (2001). Although the defendant's future dangerousness was at issue here, Texas does not provide "a life-without parole sentencing alternative to capital punishment." Allridge v. Scott, 41 F.3d 213, 222 (5th Cir. 1994). At the time of Mr. Ramos's conviction, Texas law allowed for the parole of an individual sentenced to life imprisonment after 35 years. Tex. Crim. P. Art. 42.18 § 8(b)(2) (1991). Although Mr. Ramos may not have been eligible for parole until he was 73 had he received a life-imprisonment sentence, this fact does not implicate Simmons, which requires parole ineligibility as a matter of law, not speculative future parole ineligibility as a matter of fact. Allridge, 41 F.3d 221-22.

Although Mr. Ramos is correct in noting that several justices of the Supreme Court have recognized "[the] obvious tension between th[e] [Texas] rule and our basic holding in Simmons . . .," Brown v. Texas, 522 U.S. 940, 940 (1997)(Stevens, J., dissenting from denial of certiorari), the Supreme Court has not extended Simmons beyond its original holding: "We have not extended Simmons to cases where parole ineligibility has not been established as a matter of state law at the time of the jury's future dangerousness

8

deliberations in a capital case." Ramdass v. Angelone, 530 U.S. 156, 165 (2000) (plurality opinion). "Simmons created a workable rule. The parole-ineligibility instruction is required *only when*, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law." Id. at 166 (emphasis added); Allridge, 41 F.3d at 222 (Simmons "requires the state to inform a sentencing jury about a defendant's parole ineligibility when, *and only when*, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is *legally ineligible* for parole." (second emphasis added)).

Moreover, in Muniz v. Johnson, 132 F.3d 214, 224 (5th Cir. 1998), this court expressly foreclosed the exact argument made here by Mr. Ramos, i.e., that Simmons should be extended to situations in which the defendant's age and his mandatory time in prison would make him de facto ineligible for parole:

> In Allridge, we distinguished Simmons v. South Carolina, 512 U.S. 154, 114 S. Ct. 2187, 129 L. Ed.2d 133 (1994), upon which Muniz relies, because in Simmons, state law made the petitioner legally ineligible for parole, while Texas capital defendants, sentenced when Muniz was, would be eligible for parole in thirty-five years if sentenced to life imprisonment. Accordingly, the claim has no merit under the law of our circuit.

Muniz, 132 F.2d at 224. See also Tinger v. Cockrell, 264 F.3d 521,

525 (5th Cir. 2001) ("In Simmons, the Supreme Court expressly held that its ruling does *not* apply to Texas, because it does not have a life-without-parole alternative to capital punishment. . . . Tinger was not entitled to a jury instruction regarding his 35-year parole ineligibility, because only prisoners who face life sentences without any possibility of parole can demand a Simmons instruction."); Rudd v. Johnson, 256 F.3d 317, 321 (5th Cir. 2001) ("[N]either the due process clause nor the Eighth Amendment compels instructions on parole in Texas."); Soria v. Johnson, 207 F.3d 232, 243 (5th Cir. 2000) (Reliance on Simmons was unavailing as the defendant was eligible for parole after a term of years.); Miller v. Johnson, 200 F.3d 274, 290 (5th Cir. 2000) (same); Hughes v. Johnson, 191 F.3d 607, 617 (5th Cir. 1999) (This court has repeatedly rejected claims for extending Simmons to cases in which defendants become eligible for parole after a term of years.); Allridge, 41 F.3d at 222 (Because Texas did not statutorily provide for parole ineligibility at the time of Allridge's conviction, his reliance on Simmons was unavailing.); Johnson v. Scott, 68 F.3d 106, 112 (5th Cir. 1995) ("We have consistently held . . . that neither the due process clause nor the Eighth Amendment compels instructions on parole in Texas."); Montoya v. Scott, 65 F.3d 405, 416-17 (5th Cir. 1995) (Simmons does not extend to situations other than when the defendant is statutorily ineligible for parole). Consequently, Mr. Ramos has not made a substantial showing of the

10

denial of a constitutional right, and his request for a COA on this issue is denied.[5]

B.    Juror Challenge for Cause

Mr. Ramos also contends that the trial court violated his rights under the Sixth, Eighth, and Fourteenth Amendments by excluding Ms. Olga Linda Perez for cause as a potential juror because of her general objection to the death penalty in violation of Witherspoon v. Illinois, 391 U.S. 510 (1998).  In Witherspoon, the Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon, 391 U.S. at 521-22.  More specifically, the Supreme Court has stated that "a

---

[5]    In addition to being foreclosed by precedent, Mr. Ramos's claim for relief is also barred under Teague v. Lane, 489 U.S. 288 (1989).  Ramos "urges us to adopt a rule that would allow him to present evidence concerning his thirty-five year ineligibility for parole.  This rule is certainly new as Simmons was based on lifetime parole ineligibility." Clark v. Johnson, 227 F.3d 273, 282 (5th Cir. 2000); see also Tinger v. Cockrell, 264 F.3d 521, 525 (5th Cir. 2001) ("We have repeatedly held that an extension of the scope of Simmons will constitute a "new" rule under Teague."); Wheat v. Johnson, 238 F.3d 357, 361 (5th Cir. 2001) ("To hold that a lengthy parole ineligibility is the de facto equivalent of a life sentence without possibility of parole . . . would create a new rule under the law of our Circuit" and is barred by Teague.); Montoya v. Scott, 65 F.3d 405, 416-17 (5th Cir. 1995) ("[A]n extension of Simmons to encompass situations in which a defendant was eligible for parole would be barred under Teague . . .").

11

juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Adams v. Texas, 448 U.S. 38, 45 (1980). "The State does not violate the Witherspoon doctrine, [however,] when it excludes prospective jurors who are unable or unwilling to address the penalty questions with . . . impartiality." Id. at 46. The state may "bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths." Id. at 50. This standard "does not require that a juror's bias be proved with 'unmistakable clarity.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985).

"[A] court's exclusion of jurors for cause is a question of fact." McCoy v. Lynaugh, 874 F.2d 954, 960 (5th Cir. 1989) (citing Wainwright, 469 U.S. at 427-29). Although the record may not be clear, if the trial judge is left "with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law," deference must be paid to his decision, as he is the one who sees and hears the juror. Wainwright, 469 U.S. at 425-26. A trial court's finding that a venireman is biased is "based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." Id. at 428. Federal habeas review "gives federal habeas courts no license to redetermine the credibility of witnesses whose demeanor has been

12

observed by the state trial court but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "[W]hile the cold record [may] arouse[] some concern, only the trial judge could tell which of [the juror's] answers was said with greatest comprehension and certainty." Patton v. Yount, 467 U.S. 1025, 1039-40 (1984). The trial courts, not federal habeas courts, are assigned the "difficult task of distinguishing between prospective jurors whose opposition to capital punishment will not allow them to apply the law or view the facts impartially and jurors who, though opposed to capital punishment, will nevertheless, conscientiously apply the law to the facts adduced at trial." Id. at 421. The question to be asked of a reviewing court is not whether it agrees with the trial court's findings, but whether those findings are fairly supported by the record. Id. at 434.

Mr. Ramos argues that during voir dire, Ms. Perez indicated that she would follow the law and consider the entire range of punishment if she were chosen as a juror. Ms. Perez stated that she would be able to listen to the evidence and decide if the state met its burden and that she would be able to set aside her religious beliefs about the death penalty "and answer the Special Issues No. 1 and 2 honestly, based on the evidence presented." When the prosecutor explained, however, that the jury's answers to the special issues may force the trial court to impose the death penalty, Ms. Perez indicated that her beliefs would "prevent" and "impair" her from being a juror in this case. Moreover, Mr. Ramos

13

admits that during other portions of voir dire, Ms. Perez gave unambiguous answers indicating that she could not assess the death penalty. In response to a written questionnaire, Ms. Perez stated, "I could never under any circumstances return a verdict which requires assessing the death penalty." Nonetheless, Mr. Ramos argues that Ms. Perez was a qualified juror who should not have been excluded.

Mr. Ramos admits that Ms. Perez unequivocally stated that she could not assess the death penalty. The trial court's decision to exclude Ms. Perez was made after listening to her responses and observing her conduct and demeanor. Patton cautions us not to conduct an independent assessment of which of Ms. Perez's statements should be credited. Mr. Ramos has not rebutted the presumption of correctness accorded to the trial court's factual finding on this issue and has not provided this court with reason to encroach upon the trial judge's province. Because the trial court's findings are fairly supported by the record, Mr. Ramos is not entitled to a COA on this claim.

### C. Lesser Included Offense

Mr. Ramos's final argument in his COA application is that although the trial court instructed the jury on the offense of capital murder and the lesser included offense of murder, it erroneously denied his request to instruct the jury on the lesser included offense of voluntary manslaughter in violation of the

14

Fifth Amendment. Because voluntary manslaughter is a lesser included offense of capital murder, Nobles v. Johnson, 127 F.3d 409, 418 (5th Cir. 1997), Mr. Ramos argues that the trial court's actions violated Beck v. Alabama, 447 U.S. 625, 638 (1980), which prohibits a court from imposing a death sentence if the jury was not permitted to consider a lesser included offense supported by the evidence.

Under Beck, 447 U.S. at 634, a capital defendant is entitled to a lesser included offense instruction only "if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater." See also Cantu v. Collins, 967 F.2d 1006, 1013 (5th Cir. 1992); Lincecum v. Collins, 958 F.2d 1271, 1276 (5th Cir. 1992). The lesser included offense of voluntary manslaughter need only be given to the jury if there is "proof necessary to establish the offense charged and if there is some evidence in the record" that the defendant is guilty only of voluntary manslaughter. Nobles, 127 F.3d at 418-19. At the time of Mr. Ramos's trial, a person was guilty of voluntary manslaughter under Texas law if "he cause[d] the death of an individual under circumstances that would constitute murder under Section 19.02 of th[e] [Texas Penal] Code, except that he cause[d] the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Pen. Code § 19.04(a) (West 1979). The statute further defined "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in

15

a person of ordinary temper sufficient to render the mind incapable of cool reflection." Id. § 19.04(c).

As the magistrate's report and recommendation stated, there is inadequate evidence in the record to support a charge for the lesser included offense of voluntary manslaughter. The only possible evidence of voluntary manslaughter in the record is the testimony of the officer who interviewed Mr. Ramos and who stated that Mr. Ramos told him that upon arriving at home, Mr. Ramos "[f]ound a hammer in [his wife's] hand and he got upset because the kids were dead. He tried CPR or something like that and then got the same hammer and hit her on the head." This story, however, is only one version of a number of stories that Mr. Ramos told to the police. Other than his own assertions, Mr. Ramos cites no evidence that such a voluntary manslaughter charge is warranted. "[The defendant's] unsupported conjecture is hardly probative on the issue of whether he acted under the immediate influence of sudden passion." Cantu, 967 F.2d at 1014. Moreover, Mr. Ramos's contention that he tried to perform CPR belies the assertion that his conduct arose out of "the *immediate influence* of sudden passion arising from an *adequate* cause." Cf. Anderson v. Collins, 18 F.3d 1208, 1219 (5th Cir. 1994) (concluding that an intervening action requiring cool reflection and calmness refutes the suggestion that a rational trier of fact could convict a defendant of voluntary manslaughter). Thus, a COA should not issue on this ground.

16

D.  <u>Motion for Remand</u>

After filing his motion for a COA, Mr. Ramos moved to remand this case to the district court by raising an equitable tolling argument and by arguing that the Texas Court of Criminal Appeals refused to provide him with <u>Ake</u>[6] motions in the case.  As these claims were wholly unrelated to this case, the motion was denied. Mr. Ramos then filed for reconsideration, raising the new argument that "by failing to continue the appointment of Mr. Joe Connors [Ramos's appellate counsel] as counsel for applicant in the state habeas corpus proceedings," the trial court violated its own precedent in <u>Stotts v. Wisser</u>, 894 S.W.2d 366 (Tex. Crim. App. 1995), and <u>Stearnes v. Clinton</u>, 780 S.W.2d 216 (Tex. Crim. App. 1989) (en banc).  Although Mr. Ramos recognizes that this claim is procedurally barred because it was not raised in the district court, he seeks permission to raise it nonetheless under <u>Martinez v. Johnson</u>, 225 F.3d 229 (5th Cir. 2001), which allows procedurally barred claims to be raised if the defendant shows cause and actual prejudice.  In purporting to establish cause to raise this new argument, Mr. Ramos alleges that it was impossible for the state or federal habeas counsel to raise this argument because certain documents were "secretly" filed under seal in the Texas Court of Criminal Appeals to which he did not have access.

Based on the Mr. Ramos's contention that there were sealed

---

[6] <u>Ake v. Oklahoma</u>, 470 U.S. 68, 86 (1985).

17

documents in the state record to which he did not have access, this court allowed Mr. Ramos to file a supplemental brief and documentation in support of his claim. Mr. Ramos submitted documents demonstrating that he was denied the opportunity to have his appointed trial counsel continue as his counsel in the state habeas proceeding, despite requests by Mr. Ramos and his appellate counsel. Mr. Ramos was then granted leave to file his letter brief out-of-time.

Despite Mr. Ramos's contention, the key documents which he claims were secretly filed under seal in the state court are clearly available in the state and federal habeas record, i.e., (1) the trial court's findings describing the request of Mr. Ramos and Mr. Connors that Mr. Connors be appointed state habeas counsel, and (2) the order of the Texas Court of Criminal Appeals appointing Mr. Kyle Welch as Ramos's state habeas counsel instead of Mr. Connors. Thus, Mr. Ramos's allegation that he did not have access to these documents is unfounded and his argument for "cause" to excuse his failure to raise this argument in the district court is without merit. His motion for reconsideration is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Mr. Ramos's request for a COA is DENIED. Mr. Ramos's outstanding motion for reconsideration of this court's earlier denial of his motion to remand this case to the

18

district court is also DENIED.